**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TRACY F.,[1]                                             Case No. 2:23-cv-00188

        Plaintiff,                              Marbley, J.
                                                        Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tracy F. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff argues that the ALJ erred in her evaluation of the psychological opinion evidence. For the following reasons, the undersigned recommends that the Commissioner's decision be AFFIRMED

**I. Summary of Administrative Record**

On January 24, 2020, Plaintiff filed three separate applications: (1) an application for a Period of Disability and Disability Insurance Benefits ("DIB"); (2) a protective Title II application for disabled widow's benefits[2]; and (3) a protective Title XVI application for supplemental security income ("SSI").[3] In all three applications, Plaintiff initially alleged

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]In order to prove entitlement to a disabled widow's benefit in this case, Plaintiff was required to prove that her disability began on or before August 31, 2019. (Tr. 20).
[3]Plaintiff was insured for DIB through June 30, 2022. (Tr. 20).

1

disability beginning on December 31, 2017, a few days after she was laid off from her last job working as an accounts payable representative.

In her application, Plaintiff alleged that she became disabled at the end of 2017 based on a combination of depression, anxiety, back pain, bilateral knee pain, and shortness of breath. (Tr. 72). After Plaintiff's claim was denied on initial consideration and on reconsideration, she requested an administrative hearing before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held on September 24, 2021, at which Plaintiff's counsel appeared, but at which Plaintiff herself was absent. (Tr. 61-70).  ALJ Noceeba Southern proceeded with the hearing, advising counsel that Plaintiff's appearance would be "constructively waive[d]." (Tr. 64). However, the ALJ further advised that she would issue a "show cause" order to permit Plaintiff to explain her absence, following which she would determine if "there is good cause…[to have] a supplemental hearing." (*Id*.) The ALJ admitted documentary exhibits and solicited testimony from a vocational expert ("VE"). (*Id*.) After later determining that "good cause" existed, ALJ Southern convened a supplemental hearing. On February 11, 2022, Plaintiff appeared telephonically and gave testimony; a second VE also testified at the supplemental hearing. (Tr. 39-60).

At the February 2022 hearing, Plaintiff amended her alleged onset date from December 31, 2017 to June 2, 2019. As of the amended onset date, Plaintiff was 50 years old, defined as an individual closely approaching advanced age. (Tr. 32). She testified that she has a high school education, and lives in a single family home with three grandchildren (ages 14, 12, and 5) for whom she became the primary caretaker following the death of her daughter in 2017.

On February 28, 2022, ALJ Southern issued an adverse written decision, determining that Plaintiff had not been under a disability at any time between her newly alleged onset date of June 2, 2019 and the date of the adverse decision. (Tr. 19-33). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

The ALJ determined that Plaintiff has the following severe impairments: chronic obstructive pulmonary disease; degenerative disc disease; obesity; anxiety disorder; and depressive disorder. (Tr. 22). The ALJ further found that Plaintiff's hypertension was a "non-severe" impairment that did not more than minimally affect Plaintiff's ability to perform basic work functions. Last, the ALJ found Plaintiff's complaints of bilateral wrist pain and knee pain were not validated by laboratory or clinical findings, by imaging records or by other objective evidence that would show a medically determinable impairment. (Tr. 22-23). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 23). Plaintiff does not assert error in the assessment of the severity of her impairments.

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC) to perform light work subject to the following limitations:

> the claimant can occasionally climb ramps and stairs, but must avoid climbing ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch; occasionally crawl; must avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, and gases. The claimant can perform simple, routine tasks with no fast pace or strict production quotas; with occasional changes and decision making; and can have frequent interaction with others.

3

(Tr. 25). Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform her past work, but determined she still could perform other unskilled jobs that exist in significant numbers in the national economy, including the representative occupations of warehouse checker, weight recorder, and mail clerk. (*Id.* at 32-33). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 33).

Plaintiff does not challenge the ALJ's assessment of her physical RFC. Instead, she seeks reversal on grounds that the ALJ failed to comply with a mandatory articulation requirement when she evaluated the psychological opinion evidence. More specifically, Plaintiff asserts error in the ALJ's explanation that the opinions of an examining psychologist were only partially persuasive because they were "speculative," and in the ALJ's explanation for the mental RFC finding that she retains the ability to engage in "frequent" interactions instead of the "occasional superficial contact" endorsed by two non-examining agency consultants. In part because Plaintiff fails to show any prejudice that resulted from the asserted errors, the undersigned recommends affirming the ALJ's decision.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

4

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still

perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B.  Plaintiff's Limited Challenge to her Mental RFC

Plaintiff challenges only the ALJ's evaluation of the psychological opinion evidence as articulated. Because it is relevant both to the ALJ's articulated explanation and to the harmless error analysis, the undersigned begins with a summary of the relevant mental health evidence, including the psychological opinions at issue.

### 1.  Relevant Mental Health Evidence

As stated above, Plaintiff amended her alleged onset date to June 2, 2019. The medical evidence to support Plaintiff's claim is relatively sparce, with no records at all prior to June 1, 2020, and limited mental and physical health records thereafter. The ALJ repeatedly referred to Plaintiff's treatment records as "limited." (*See*, *e.g.*, Tr. 24; Tr. 28, discussing  Plaintiff's "limited [mental health] treatment record for the period at issue."). For instance, Plaintiff never required any inpatient treatment or emergency intervention. (Tr. 30). She also did not undergo counseling. And she only sought medication

6

management for her symptoms a year after her alleged disability onset date, in June 2020.

Plaintiff does not quibble with the ALJ's characterization of her "limited" treatment, or with the ALJ's summary of her records. On June 1, 2020, Plaintiff established care with a new primary care provider (Brenna Goodwin, NP) and reported anxiety, irritability and restlessness, but that she was still able to carry out all activities of daily living. She was started on a trial of Celexa for depression with referrals provided for additional psychiatric evaluation and treatment, but there is no record of follow-up. (*See* Tr. 24, citing Plaintiff's "inconsistent follow through with prescribed treatment regimens" as a basis for finding only "mild" limitation in the domain of understanding, remembering or applying information). Within a few weeks of beginning Celexa and Xanax for her depression and anxiety, Plaintiff reported stable symptoms. (Tr. 28). The ALJ reviewed progress notes from NP Goodwin, noting that her medications appeared to be effective, with minor adjustments made between initiating treatment on June 1, 2020 and the supplemental hearing date in February 2022. (Tr., 24, discussing "improvement in the claimant's symptoms with compliance with medication management," and Tr. 29, discussing periodic reports with no medication side effects). The ALJ also noted "generally unremarkable" mental status exams. (Tr. 30; *see also* Tr. 28).

In addition to the referenced treatment records, the ALJ evaluated Plaintiff's subjective statements regarding her mental health limitations. Plaintiff reported "severe anxiety associated with the loss of her daughter and mother, with 'small' anxiety attacks several times per week, and disturbed sleep," as well as "panic attacks with triggers including thoughts and fears, social interactions, and discussing the loss of her daughter."

(Tr. 26). She indicated she was able to go to the grocery store and use a list for daily projects, but "is limited by anxiety flares." (*Id.*) However, the ALJ discounted those subjective statements, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 29). The ALJ specifically cited Plaintiff's conservative and limited treatment, mental status exams, and general independence "including personal hygiene and dressing, interacting with treatment providers, caring for her grandchildren and ill father, as well as being able interact appropriately with friends and neighbors." (*Id.*) Plaintiff claims no error in this adverse credibility/consistency determination.

The only other relevant mental health evidence was the psychological opinion evidence. On July 6, 2020, shortly after Plaintiff sought medication for her symptoms, agency psychologist Susan Rowland, Ph.D., RN, conducted a Consultative Examination ("CE"). Dr. Rowland's report focuses on the four domains of the "Paragraph B" criteria used at Step 3 of the sequential process. Based on her clinical interview, Dr. Rowland found "mild" limitation in the area of understanding, remembering or applying information, but "moderate" limitations in three other functional domains, including in the domain of "interacting with others."

Dr. Rowland's CE report was considered by two non-examining agency consultants, Paul Tangeman, Ph.D., and Jennifer Swain, Ph.D., who offered identical RFC opinions for consideration at Steps 4 and 5 of the sequential analysis, using a standard Mental RFC Assessment Form commonly known as the Psychiatric Review Technique Form ("PRTF"). The reviewing consultants agreed with Dr. Rowland's

8

"Paragraph B" criteria assessment of "mild" limitations in Plaintiff's abilities to understand, remember or apply information, and "moderate" limitations in her abilities to interact with others, to concentrate, persist or maintain pace, and to adapt or manage herself. (Tr. 25; *see also* Tr. 74, 115).  In response to more detailed queries about work-related limitations concerning social interactions, the reviewing consultants opined that Plaintiff has "moderate" limitations in her ability to interact appropriately with the general public and in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 78, 119). By contrast, they found *no significant limitations* in three other functional areas listed on the PRTF under interacting with others, including her abilities to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*) When asked to summarize social interaction limitations in narrative form, they opined that Plaintiff "is capable of occasional superficial contact with coworkers, supervisors, and general public." (*Id.*)[4]

### 2.  Plaintiff's Assertion of Articulation Error

Plaintiff argues that the ALJ committed reversible error by failing to sufficiently articulate her analysis of the "supportability" and "consistency" of the psychological opinions offered by Dr. Rowland and the two reviewing consultants. Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion by considering multiple factors, including "supportability" and "consistency." 20 C.F.R.. §404.1520c(c). Supportability focuses on the provider's explanations for his or her

---

[4]Elsewhere on the PRTF, the consultants opined that Plaintiff is "capable of simple to moderately complex 1-4 step job tasks without strict production standards," and can perform "static work with occasional change from normal routine." (Tr. 78, 119).

opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations – such as Dr. Rowland's clinical observations during the interview process. 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

Plaintiff first points out that the ALJ failed to use the words "supportability" or "consistency." But "magic words" are not required. Therefore, an ALJ need not use the precise words "supportability" or "consistency," so long as he or she has explained how those two "most important" factors were considered in determining the persuasiveness of each opinion. 20 C.F.R. § 404.1520c(b)(2) (stating we "will explain how we considered the supportability and consistency factors"); *see also Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097-CMV-JLG, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (use of words "supportability" and "consistency" not required where opinion adequately addressed both issues).

Plaintiff highlights other perceived deficiencies in the ALJ's articulation of the two "most important" factors. But the undersigned finds no reversible error in part because the ALJ's mental RFC findings as determined are both adequately explained and substantially supported. The ALJ's analysis builds "an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011). In fact, most of the ALJ's mental RFC findings can be traced to the reviewing psychologists' opinions, which the ALJ found to be partially persuasive.

The second reason that the asserted articulation errors do not support reversal is because Plaintiff can show no prejudice. A comparison of the ALJ's mental RFC findings with the consulting psychological opinions shows few differences. With respect to Dr. Rowland, Plaintiff fails to identify *any* mental RFC limitation offered by Dr. Rowland that the ALJ rejected. And, while Plaintiff identifies a (singular) more restrictive social interaction limitation endorsed by the non-examining reviewers, Plaintiff fails to rebut the Commissioner's persuasive argument that the more restrictive limitation would not have altered the non-disability determination. That is because a vocational expert offered unrebutted testimony at the first administrative hearing that an individual with Plaintiff's RFC but the more restrictive social interaction limitation could nonetheless perform full-time work as a housekeeping cleaner, price marker, garment sorter, dining room attendant, bench assembler, addresser, or touch-up screener. (Tr. 66-68).

Courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Plaintiff here does not allege a deprivation of substantial rights; therefore, the alleged errors do not require reversal in the absence of prejudice. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (internal quotation marks and citation omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021); *see also*, *generally*, *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009).

11

### a. Analysis of Dr. Rowland's opinions

To further explain why any error (if it existed) was harmless, the undersigned reviews the ALJ's analysis of Dr. Rowland's opinions:

> Dr. Rowland diagnosed major depressive disorder and opined: the claimant has the ability to understand, carry out, and remember simple, one-step instructions; may have difficulty in the completion and remembering of multi-step tasks and tasks of increasing complexity; may then need additional training and supervision by having such tasks explained and shown to her; may require extra time to learn new tasks and will require supervision on the completion of those tasks; appears able to complete basic tasks and respond appropriately to directions from superiors and coworkers in a position appropriate for her current circumstances; working at simpler tasks or tasks that she finds interesting would likely not have difficulty sustaining concentration and persisting in work-related activity at a reasonable pace; will likely have some challenges and will require extra time and supervision to complete more complex tasks; a fast-paced work environment may not be a suitable setting for this claimant; may perform better where she has limited contact with other co-workers and the public under a consistent (not multiple), trusted supervisor accomplishing simple tasks with clear, simple instructions; and would also benefit from learning appropriate coping strategies or being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job (Exhibit 2F, pages 12-15).

(Tr. 28-29; *see also* Tr. 31). The ALJ found Dr. Rowland's opinions only "somewhat persuasive," explaining that she "did not incorporate many of Dr. Rowland's assessment[s]" due to the use of "speculative phrases like 'may,' 'will likely,' and 'if mental health symptoms worsen'" as well as Dr. Rowland's failure to articulate limitations "using vocationally relevant terms." (Tr. 31).

Physicians and other medical sources may offer opinions on a claimant's job-related functional limitations, but at the administrative hearing level it is the ALJ alone who has the responsibility to define the RFC in vocational terms. *See* 20 C.F.R. §416.946(c). Not infrequently, an ALJ will describe a particular opinion as vocationally vague or imprecise, and will further define a term or phrase in more vocationally relevant

terms when articulating the RFC at Steps 4 and 5, or for purposes of soliciting testimony from a vocational expert. Having reviewed hundreds of ALJ opinions, the undersigned has understood such verbiage to be a term of art. Here, however, Plaintiff argues that the ALJ's partial rejection of Dr. Rowland's opinion as "speculative" or not "vocationally relevant" does not satisfy the regulatory mandate to discuss the "consistency" and "supportability" factors.

Arguably, with respect to "consistency," the ALJ discussed and analyzed all relevant medical and nonmedical evidence including Plaintiff's undeniably "limited" mental health treatment, "unremarkable" mental status exams and "stable" symptoms once she began medication, as well as subjectively reported symptoms that were inconsistent with disability. This Court has concluded that a "consistency" analysis can be sufficient when an ALJ's opinion discusses all relevant evidence in context. *See Hardy*, 2021 4059310, at *3-4 (affirming where ALJ failed to use word "consistency" but discussed relevant medical and non-medical evidence that was inconsistent with consulting psychologist's limitation on social interactions); *Howard H. v. Comm'r of Soc. Sec.*, 2:20-cv-4932-ALM-CMV, 2022 WL 765217, at *4 (S.D. Ohio March 14, 2022) (finding no error where the ALJ did not use the term "consistency" but discussed other evidence received at the hearing, including that the plaintiff's depression was controlled by medications).

Somewhat surprisingly given the ALJ's discussion of all relevant evidence here, the Commissioner concedes that "the ALJ did not apply the 'consistency' factor." (Doc. 10 at 8). Instead, the Commissioner argues that the ALJ was excused from the articulation requirement because the "speculative nature of Dr. Rowland's opinions precludes a

consistency analysis." (Doc. 10 at 8). For the reasons discussed below, the undersigned does not agree that the ALJ was excused from the articulation requirement, but instead finds any error to have been harmless.

As for the supportability factor, the ALJ pointed out that Dr. Rowland stated that Plaintiff herself reported seeking treatment for anxiety less than two months prior to her examination. (*See* Tr. 28, noting Plaintiff's report that she had only "only felt anxious enough to seek and obtain medication for anxiety within the last 2 months."). The ALJ also remarked on Plaintiff's report to Dr. Rowland that she was living in a split level home with her son, his girlfriend and their two children,[5] and that she not only had to care for five grandchildren (including three for whom she has custody), but was also providing care for her ill father. (*Id*.)  The ALJ's discussion of Dr. Rowland's report included many of Dr. Rowland's observations, including Plaintiff's reported anxiety, but continued ability "to grocery shop, pay bills, and manage money; … to use the internet and [go to] visit friends and family; as well as minimally [to be] able to receive visits from friends." (*Id*.; *see also* Tr. 493) Thus, the ALJ discussed the support provided by Dr. Rowland in her report and why the recency of Plaintiff's treatment and breadth of Plaintiff's abilities were at odds with more severe limitations.

Reasonable jurists may disagree on whether the ALJ's discussion of Dr. Rowland's report and other relevant evidence throughout her opinion is sufficient to satisfy the mandatory articulation requirement. Ultimately, however, reversal is not required because

---

[5]Plaintiff testified at the February 2022 hearing that she continued to live in a single family home with the three grandchildren over whom she retains custody. (Tr. 26).

14

Plaintiff cannot show she was prejudiced by the ALJ's failure to better articulate her analysis of the "supportability" and "consistency" of Dr. Rowland's opinions.

Returning to the Commissioner's argument that the ALJ was not required to comply with the regulation because Dr. Rowland's opinions were so vague, the undersigned acknowledges a body of earlier case law that suggested that rejection of an opinion as "speculative" was sufficient. *See generally, Quisenberry v. Comm'r of Soc. Sec.,* 757 Fed. Appx. 422, 434 (6th Cir. 2018) (An ALJ may properly reject a vague opinion that does not provide any specific functional limitations); *Benson v. Saul*, No. 3:19-cv-02804, 2021 WL 1554219 at *5 (N.D. Ohio Jan. 11, 2021), R&R adopted *sub nom. Benson v. Comm'r of Soc. Sec.*, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021) (the examining psychologist used so many qualifiers like "may" that the court could find "no reversible error stemming from an ALJ's decision not to credit such equivocal limitations"). But the cited case law did not consider the new articulation requirements that went into effect on March 27, 2017.

Today, an ALJ who dismisses a psychological opinion solely because it is "speculative" risks running afoul of the new articulation requirements. In *Howard H. Comm'r of Soc. Sec.*, *supra,* 2022 WL 765217, at *3, Chief District Judge Marbley disagreed with a magistrate judge who had opined that the ALJ's analysis of the "supportability" factor based on vagueness alone was sufficient. But finding some error does not mean that reversal is required. In *Howard*, Judge Marbley also reasoned that the articulation error was harmless because the psychologist's opinions contained so many qualifiers and were so vague (and not vocationally relevant) that the opinions

"would not support a substantive finding that Plaintiff has any lesser residual functional capacity than the ALJ determined." *Id.*, at *4.

For the same reasons, any error in this case was harmless. Plaintiff argues that Dr. Rowland "found more severe limitations than the ALJ included." (Doc. 8, PageID 566). But Plaintiff's Statement of Errors does not identify precisely what <u>specific</u> "severe limitations" were omitted. Nor can this Court hazard a guess. Dr. Rowland's opinions were extremely vague with few - *if any* - definitive limitations.[6] The ALJ reasonably and appropriately translated Dr. Rowland's most concrete opinions into vocational terms, formulating a mental RFC that permits Plaintiff to "perform simple, routine tasks with no fast pace or strict production quotas; with occasional changes and decision making." (Tr. 25). In the absence of identifying *any* specific limitation that Dr. Rowland supported that the ALJ omitted, Plaintiff can show no prejudice even if the ALJ's articulation of the "supportability" and "consistency" factor was overly cursory. *Accord Hardy*, 2021 WL 4059310 at *2-3 (rejecting plaintiff's argument that ALJ failed to adequately discuss supportability where ALJ observed that examining psychologist relied on the clinical interview, and cited information in the CE report including that plaintiff was able to socialize with his family, had not sought counseling or taken medication, and could interact effectively during the interview).

In her reply memorandum, Plaintiff calls out Dr. Rowland's opinions that Plaintiff "has the ability to understand, carry out, and remember simple, one-step instructions," but

---

[6]For example, Dr. Rowland suggested that Plaintiff "*may perform better* where she has limited contact with other co-workers and the public under a consistent …supervisor accomplishing simple tasks with clear, simple instructions," (Tr. 469). But a qualified opinion that Plaintiff "may perform better" under hypothetical "ideal" conditions is not inconsistent with the ALJ's conclusion that Plaintiff remains capable of fulltime work without such "ideal" performance-enhancing conditions.

16

"may have difficulty in the completion and remembering of multi-step tasks and tasks of increasing complexity" and "may…need additional training and supervision" for more complex tasks. (Tr. 467; *see also* Tr. 468, "if the claimant is working at simpler tasks or tasks that she finds interesting, she would likely not have difficulty sustaining concentration and persisting …at a reasonable pace" but "may have challenges" in a "fast-paced environment").  Notably, these opinions do not limit Plaintiff solely to "simple, one-step instructions" – Dr. Rowland merely opined that she "*may* have difficulty" with multi-step or increasingly complex tasks. And she repeatedly opined that "the claimant appears able to complete basic tasks and respond appropriately to directions from superiors and coworkers in a position appropriate for her current circumstances." (Tr. 467; *see also* Tr. 466, "she is capable of managing at least basic tasks in an employment setting with simple instructions and a moderately paced work speed.").

In context, I find no disconnect between the referenced opinions and the ALJ's RFC limitation to "simple, routine tasks with no fast pace or strict production quotas" and only "occasional changes and decision making." Dr. Rowland opined that Plaintiff could perform "one-step instructions" but did not prohibit tasks requiring more steps. She opined that Plaintiff could perform "at least basic tasks," noting only *possible* (not probable) difficulty with more complex tasks. (*See* Tr. 466, "Under the right employment circumstances with simple instructions, it is expected that claimant would not have significant limitations in her ability to conform to social expectations and appears capable of managing at least basic tasks and interactions."). Similarly, the two reviewing psychologists opined that Plaintiff could perform simple to moderately complex 1-4 step job tasks without strict production standards. The ALJ adequately explained why she

determined that Plaintiff should be limited to "simple, routine tasks" while excluding *potentially* problematic "moderately complex" tasks. (Tr. 30). Thus, even if the ALJ erred in failing to flesh out her articulation of the "consistency" or "supportability" factors of Dr. Rowland's opinions, any error was harmless because Plaintiff cannot point to any limitation endorsed by Dr. Rowland that the ALJ failed to adopt. *See also, generally, William D. v. Comm'r of Soc. Sec.*, 2:20-cv-5855-ALM-EPD, 2022 WL 883928, at *4 (S.D. Ohio March 25, 2022) (affirming ALJ's failure to include "one-step" limitation in CE psychological report, because an ALJ need not adopt a medical opinion verbatim, and it was clear that the ALJ found less limiting opinion of agency reviewers to be more persuasive).

### b. The Reviewing Consultants' Opinions

For slightly different reasons, Plaintiff also can show no reversible error concerning the ALJ's analysis of the reviewing agency consultants' opinions. At the initial and reconsideration levels, two consulting psychologists reviewed Dr. Rowland's report and Plaintiff's limited records and offered opinions about Plaintiff's functional limitations on the standard PRTF. The ALJ fully accepted their Paragraph B opinions at Step 3 of the sequential analysis, which mirrored those of Dr. Rowland. (Tr. 23-25). At Steps 4 and 5 of the sequential analysis, the ALJ characterized the consultants' identical RFC opinions as "somewhat persuasive," explaining:

> The undersigned has also considered the State agency psychological consultant's opinions which initially found the claimant limited to simple to moderately complex 1-4 step job tasks without strict production standards; capable of occasional superficial contact with coworkers, supervisors, and general public; and capable of static work with occasional change from normal routine (Exhibits 2A; 5A: 6A). These findings were affirmed at reconsideration (Exhibits 10A; 11A; 12A). The undersigned has found these assessments somewhat persuasive. The undersigned has found the

limitation to simple work supported, deviating from the moderately complex finding noted above, in addition to social interaction limitations. *However, the undersigned has deviated from the occasional superficial restrictions to frequent interactions with others based on the lack of support for mental health related social function limitation in this domain as discussed above. As noted above, the claimant was able to interact appropriately with treatment providers, family members, her grandchildren and ill father, neighbors, and friends supporting greater functional abilities than alleged in this area.*

(Tr. 30) (emphasis added). As previously discussed, the undersigned first rejects Plaintiff's claim of error based on the ALJ's failure to use the terms "supportability" and "consistency."

More substantively – and unlike the claim of error concerning Dr. Rowland - Plaintiff argues that articulation errors were prejudicial because the ALJ did not incorporate the consultants' limitation to "occasional superficial contact."[7] The ALJ instead determined that Plaintiff remains capable of "frequent" interactions with others in the workplace.

I find no error. With respect to "consistency," the ALJ provided substantial support for her differing view that Plaintiff was not as socially limited as the consultants suggested, citing to multiple mental health records that she believed were inconsistent with any more restrictive limitation than "frequent interactions." The ALJ noted Plaintiff's limited and conservative treatment and generally unremarkable mental status exams. (Tr. 30). She cited to Plaintiff's activities of daily living including caring full-time for her minor grandchildren and her ill father, and "being able [to] interact appropriately with friends and neighbors." (*Id.*) Elsewhere, the ALJ cited to Dr. Rowland's clinical observations, including

---

[7]Plaintiff voices no objection to the ALJ's more restrictive limitation to "simple" tasks rather than permitting both simple and "moderately complex" tasks as suggested by the consultants.

that Plaintiff "was noted as making limited and sporadic eye contact; was generally cooperative and appeared reasonably candid in responding; spoke in a monotone with hesitant and short replies; with clear and understandable speech; and endorsed has a good relationship with her father, son and daughter, son's girlfriend, 5 grandchildren, friends, and neighbors." (Tr. 24). Emphasizing the "moderate" nature of Plaintiff's social limitations, the ALJ pointed out that Plaintiff was also "able to interact appropriately with treatment providers… and evidenced no interaction or communication difficulties" despite her subjective reports of "anxiety in social settings." (*Id*.)  In short, it is clear that the ALJ determined that the consultants' limitation to "occasional superficial" interactions was not consistent with the record as a whole.

The undersigned also finds no error in the ALJ's analysis of the "supportability" of the consulting opinions. The standard Psychiatric Review Technique Form used by agency reviewing psychologists succinctly lists the evidence they considered – here, Dr. Rowland's CE report and a handful of records in evidence at the time of their respective review dates. The ALJ fully discussed both the records considered by the consultants and additional evidence that post-dated the consultants' review, all of which demonstrated that Plaintiff's psychiatric symptoms benefitted from medication management over time, and supported the ALJ's RFC determination of "frequent" interaction. Therefore, the ALJ's articulated analysis is free from error. *See Howard H. v. Comm'r of Soc. Sec*., 2022 WL 765217, at *5 (explaining that when one doctor bases his opinion on another's findings that are also in the record, overlap between "consistency" and "supportability" is inevitable); *see also Sasha M. v. Comm'r of Soc. Sec*., No. 2:22-CV-2101-EAS-KAJ, 2023 WL 1793536, at *7 (S.D. Ohio Feb. 7, 2023), *report and recommendation adopted*, No.

2:22-CV-2101, 2023 WL 6383450 (S.D. Ohio Sept. 29, 2023) ("[T]he ALJ cited to the same records upon which the state agency psychologists based their opinions.... In other words, she considered supportability and the opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence") (internal quotations omitted).

Last, Plaintiff cannot show prejudice even if a reviewing court were to find fault with the ALJ's articulation of the "supportability" or "consistency" factors concerning the consulting opinions. At the first administrative hearing, the ALJ elicited testimony from a qualified vocational expert that an individual with the same RFC but with a social limitation to "occasional and superficial interaction with others" could nonetheless perform full-time work as a price marker, garment sorter, dining room attendant, bench assembler, addresser, or touch-up screener. (Tr. 66-68). Therefore, the ALJ's adoption of the more restrictive social interaction limitation would not have altered the result.

### III. Conclusion and Recommendation

Because the Commissioner's decision reflects no reversible error and is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED** and that this case be **CLOSED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TRACY F.,                                                          Case No. 2:23-cv-00188

        Plaintiff,                                              Marbley, J.
                                                                   Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).